429 So.2d 293 (1983)
Raleigh PORTER, Appellant,
v.
STATE of Florida, Appellee.
No. 61063.
Supreme Court of Florida.
January 27, 1983.
Rehearing Denied April 28, 1983.
*294 Jerry Hill, Public Defender and Paul C. Helm, Asst. Public Defender, Chief, Appellate Division, Tenth Judicial Circuit, Bartow, for appellant.
Jim Smith, Atty. Gen. and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Porter appeals the death sentences imposed on him at resentencing. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm the sentences.
A jury convicted Porter of first-degree murder for the death of an elderly man and his wife. This Court affirmed the convictions in Porter v. State, 400 So.2d 5 (Fla. 1981). The trial court, notwithstanding the jury's recommendation of life imprisonment, had sentenced Porter to death. In deciding on that sentence the trial court considered deposition testimony which had not been introduced as evidence without affording Porter the opportunity to rebut, contradict, or impeach that testimony. We found this procedure to be a violation of due process of law:
Should a sentencing judge intend to use any information not presented in open court as a factual basis for a sentence, he must advise the defendant of what it is and afford the defendant an opportunity to rebut it.
Id. at 7. On remand the trial court again sentenced Porter to death.
Prior to Porter's trial, his defense attorney deposed Porter's former roommate, Larry Schapp. Schapp stated that Porter had told him of previously being arrested for burglary and that he, Porter, intended to commit further burglaries. According to Schapp, Porter told him that stealing a car *295 was one of his main interests and that, if necessary, he would leave no witnesses. Defense counsel specifically asked Schapp about this: "Q You mentioned leaving no witnesses. Did he talk about that possibility when he was talking about getting a car? A Yes."
At trial Schapp testified that Porter told him that he had robbed and killed the instant victims. Schapp also stated that he and another friend of Porter's took away and dumped a television set and some silverware that Porter had stolen from the victims. Neither the state attorney nor defense counsel questioned Schapp about his deposition statements regarding Porter's intentions to steal a car and to leave no witnesses.
In his original sentencing order, the court made, among others, the following findings:
1. The capital felonies were committed while the defendant was engaged in the commission of a robbery for pecuniary gain. Testimony during the trial showed that the defendant, who had recently been released from the Florida State Prison, wanted an automobile, and from the first intended to steal it. He discussed this with his roommate, Larry Schapp, and mentioned that the victim should be newly arrived in the area and not well known. This way he could kill the owner of the car and possibly the neighbors would not even know a car had been stolen, which would allow the defendant more time to get away with the automobile. The person or persons selected to be victims would be left to chance.
On August 21, 1978, the Walraths had been selected as the victims, and the defendant went to their home for the purpose of carrying out his plan. Upon entering their home he killed both of them and stole numerous items, including their automobile and television set, from them.
2. The capital felonies were committed for the purpose of avoiding or preventing a lawful arrest in that, as specified in number one above, defendant ab initio, from the beginning, intended to kill the victims to allow him more time to abscond with their automobile.
At the resentencing hearing the defense called Schapp and, in an attempt to impeach him, questioned him about his past record.[1] The defense did not question Schapp about his deposition, but, in response to the state's question on cross-examination, Schapp said that he had told the truth in the deposition.
Following the hearing, the trial court again sentenced Porter to death. In aggravation the court found the murders to have been especially heinous, atrocious, and cruel as well as making two other findings as follows:
1. The two capital felonies were committed while the defendant was engaged in the commission of a robbery for pecuniary gain. Testimony during the trial showed that the defendant, who had recently been released from the Florida State Prison, wanted an automobile, and from the first intended to steal it.
On August 21, 1978, the Walraths had been selected as the victims and the defendant went to their home for the purpose of carrying out his plan. Upon entering their home he killed both of them and stole numerous items including their automobile and television set, from them.
2. The capital felonies were committed for the purpose of avoiding or preventing a lawful arrest in that, as specified in # 1 above, defendant ab initio intended to kill the victims to allow him more time to abscond with their automobile.
Porter now claims that omitting reference to Schapp's deposition means that the trial court relied only and entirely, in resentencing, on the material presented at trial. Because the evidence regarding Porter's plan to steal a car and leave no witnesses comes from Schapp's deposition and not from any trial testimony, Porter claims that *296 the state did not carry its burden of proof regarding the findings set out above and that the court, therefore, erred in making those findings. We disagree.
The mandate of this Court required only that Porter be allowed to rebut, contradict, or impeach Schapp's deposition testimony. The defense attempted only to impeach Schapp's statement. It offered no evidence, i.e., testimony or evidence at resentencing that Porter did not say what Schapp claimed he said, to rebut or contradict that statement. Impeaching a witness goes only to that witness' credibility, and in the absence of rebuttal or contradictory evidence the trial court could justifiably rely on Schapp's deposition testimony. The essential findings of the trial judge are supported by the record.
Porter also claims that the state did not prove, beyond a reasonable doubt, that he committed the murders for pecuniary gain because it did not prove that he profited from the murders. In his brief Porter admits that the state proved that he took his victims' automobile, television, silverware, jewelry, and other items. We do not find his later giving away, throwing away, or abandoning these articles material in view of the proof that he stole them in the first place. Likewise, we find that the record supports the trial court's finding that the murders were heinous, atrocious, and cruel.
Porter contends the court erred in not finding the following as mitigating circumstances: Porter's age; his being married with two small children; no significant history of prior criminal activity; and his employment history.[2] There is no requirement that a court must find anything in mitigation. The only requirement is that the consideration of mitigating circumstances must not be limited to those listed in section 921.141(6), Florida Statutes (1981). What Porter really complains about here is the weight the trial court accorded the evidence Porter presented in mitigation. However, "mere disagreement with the force to be given [mitigating evidence] is an insufficient basis for challenging a sentence." Quince v. State, 414 So.2d 185, 187 (Fla. 1982). We do not find that the trial court failed to consider the evidence presented in mitigation of the sentence.
The trial court again overrode the original jury's recommendation of life imprisonment in resentencing Porter to death. On this appeal Porter again contends that the jury override does not meet the standard set out in Tedder v. State, 322 So.2d 908 (Fla. 1975), where this Court held: "In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Id. at 910. The record in this case supports the court's findings regarding the aggravating and mitigating circumstances. As noted by the trial court, the jury might well have been swayed by defense counsel's reading of an "extremely vivid and lurid" description of an electrocution to the jury. Additionally, the trial court had access to Schapp's deposition, which the jury did not see. This case, therefore, is similar to White v. State, 403 So.2d 331 (Fla. 1981), where we affirmed a jury override. Defense counsel's description of an electrocution might well have been calculated to influence the recommendation of a life sentence through emotional appeal. On the facts of this case, we find, even according the jury recommendation its due deference, that these sentences meet the Tedder standard.
As his final point on appeal, Porter claims that imposing a death sentence over a jury's recommendation of life imprisonment puts a defendant in double jeopardy, violates the due process clause, and constitutes cruel and unusual punishment. We *297 have consistently decided those issues contrary to Porter's contentions, Dobbert v. State, 409 So.2d 1053 (Fla. 1982); Phippen v. State, 389 So.2d 991 (Fla. 1980); Douglas v. State, 373 So.2d 895 (Fla. 1979), and we decline Porter's invitation to revisit them. We therefore affirm Porter's two sentences of death.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.
NOTES
[1] He admitted to several convictions of driving while intoxicated and to being arrested for grand theft, with that charge later being dropped.
[2] Porter was 22 years old at the time of the crimes. Additionally, although Porter had been married and had fathered 2 children, at the time of the crimes he was living with a woman other than his wife. At resentencing the trial court allowed Porter to put on more mitigating evidence. The court, therefore, did not restrict the presentation of mitigating evidence, but merely found that the evidence presented carried little or no weight in mitigation.