547 So.2d 1197 (1989)
Andrea Hicks JACKSON, Petitioner,
v.
Richard L. DUGGER, Etc., et al., Respondents.
Andrea Hicks JACKSON, Appellant,
v.
STATE of Florida, Appellee.
Nos. 73982, 74067.
Supreme Court of Florida.
July 6, 1989.
Rehearing Denied September 20, 1989.
Jeffrey E. Glen of Kaplan, Russin, Vecchi and Kirkwood & Berwin Leighton, New York City, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen., and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for respondents/appellee.
PER CURIAM.
Andrea Hicks Jackson, a state prisoner under sentence and warrant of death, petitions this Court for a writ of habeas corpus, requests a stay of execution, and appeals the trial court's denial of her rule 3.850 motion to vacate or modify the judgment and sentence. We have jurisdiction. Art. V, § 3(b)(9), Fla. Const.
*1198 Jackson was convicted in February 1984 for the first-degree murder of a police officer. The jury recommended the death penalty, and the trial judge sentenced Jackson to death. The verdict and sentence were affirmed by this Court. Jackson v. State, 498 So.2d 406 (Fla. 1986), cert. denied, 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987). The Governor signed a death warrant on March 7, 1989, scheduling the date of execution for May 9, 1989.
Jackson filed a motion to stay execution in the trial court pending consideration of her motion for postconviction relief filed in that court on April 6, 1989. Jackson also requested a stay of execution from this Court pending disposition of her petition for writ of habeas corpus. On April 19, 1989, the trial court summarily denied the motion for postconviction relief, and Jackson now appeals that denial. Because some of her claims appeared meritorious, we granted a stay of execution.
Jackson raises four issues in her petition for writ of habeas corpus, only one of which merits discussion.[1] Jackson argues that victim impact evidence was impermissibly presented to the jury during the penalty phase of her trial in violation of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). The only evidence offered by the state during the penalty phase was the testimony of Sheriff Dale Carson. The sheriff's testimony consisted of statements recounting Officer Bevel's good reputation among his fellow officers in the sheriff's department and detailing the impact the officer's death had on the morale of the other officers and on their ability to effectively carry out their duties. Trial counsel vigorously objected to the introduction of this testimony asserting his belief that the testimony was prejudicial and offered solely to inflame the jurors.
On direct appeal it was further argued that the testimony did not establish any statutory aggravating circumstance. This Court determined that the sheriff's testimony, offered by the state to prove that Jackson killed the officer for the purpose of hindering law enforcement, did not establish this aggravating factor. Because the disruption Jackson caused to law enforcement was to prevent her own arrest, the Court concluded that in such cases the applicable aggravating factor is the commission of the capital offense to avoid lawful arrest or to escape custody and, therefore, consolidated the two factors. The Court went on to state that because the admission of the testimony was presented to prove disruption of law enforcement, which was now consolidated with the aggravating factor of avoiding arrest, the sheriff's testimony was, at most, harmless error.
At the time of Jackson's direct appeal, the United States Supreme Court had not yet decided Booth v. Maryland, in which the Court held that presentation of victim impact evidence to a jury in a capital case violates the eighth amendment of the United States Constitution. The Court reasoned that evidence of victim impact was irrelevant to a capital sentencing decision because this type of information creates a constitutionally unacceptable risk that the jury may impose the death penalty in an arbitrary and capricious manner. Jackson now argues that the penalty phase testimony of Sheriff Dale Carson constitutes victim impact evidence, and thus she is entitled to a new sentencing proceeding under Booth. We agree.
Under this Court's decision in Witt v. State, 387 So.2d 922 (Fla.), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980), Booth represents a fundamental change in the constitutional law of capital sentencing that, in the interests of fairness, *1199 requires the decision to be given retroactive application. We recognized in Grossman v. State, 525 So.2d 833 (Fla. 1988), however, that no language in the Booth decision suggests that Booth be applied retroactively to cases in which there was no objection to the victim impact evidence. In this case, trial counsel did institute a timely objection to the introduction of the sheriff's testimony in the lower court and also moved for a mistrial at the close of the testimony. Additionally, this issue was addressed on direct appeal. Therefore, Jackson is not procedurally barred from claiming relief under Booth.
Our review of Sheriff Carson's testimony reveals that he was asked to state his opinion regarding Officer Bevel's reputation among the other officers in the department. He was then asked to describe the impact Officer Bevel's death had on his department and how a police officer's death affects the safety of the community. The victim impact evidence presented to the jury in this case is similar to that which was presented to the jury in Booth. Rather than focusing the jury's attention on the character of the defendant and the circumstances of the crime, the victim impact evidence diverted the jurors' attention to the character and reputation of the victim and the effect of his death on his fellow officers and the safety of the members of the community. The Supreme Court stated in Booth that there is no justification for permitting the decision of who may merit the death penalty "to turn on the perception that the victim was a sterling member of the community rather than someone of questionable character." Booth v. Maryland, 482 U.S. at 506, 107 S.Ct. at 2534 (footnote omitted).
We recognize the sheriff's testimony detailed the impact Officer Bevels' death had on the victim's fellow officers instead of the impact it had on the victim's family. We believe, however, that the presentation of this information serves the same purpose of inflaming the jury; further, it diverts the panel from deciding the case based on the relevant evidence concerning the crime and the defendant. It is clear that the testimony of Sheriff Carson was designed to induce a fear for public safety and to elicit sympathy for the victim.
Victim impact evidence is irrelevant to a capital sentencing decision, and its introduction to the jury creates the risk that the decision to impose the death penalty was made in an arbitrary and capricious manner. Booth v. Maryland, 482 U.S. at 502-03, 107 S.Ct. at 2532-33. The United States Supreme Court recently reaffirmed this principle enunciated in Booth in the case of South Carolina v. Gathers, ___ U.S. ___, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989). In Gathers, comments were included in the prosecutor's closing argument characterizing the victim as a religious man and a civic-minded citizen. Finding these comments "unnecessary to an understanding of the circumstances of the crime," the South Carolina Supreme Court concluded that these comments regarding the personal characteristics of the victim suggested that the defendant deserved to be sentenced to death "because the victim was a religious man and a registered voter." Gathers v. South Carolina, 295 S.C. 476, 484, 369 S.E.2d 140, 144 (1988). In affirming the South Carolina decision, the United States Supreme Court reiterated its decision in Booth by stating once again that "`[a]llowing the jury to rely on [this information] ... could result in imposing the death sentence because of factors about which the defendant was unaware, and that were irrelevant to the decision to kill.'" South Carolina v. Gathers, ___ U.S. at ___, 109 S.Ct. at 2208 (quoting Booth v. Maryland, 482 U.S. at 505, 107 S.Ct. at 2534).
We cannot say beyond a reasonable doubt that the jury would have recommended a sentence of death had it not heard the victim impact evidence presented here. Therefore, we vacate Jackson's sentence and order a new sentencing proceeding to be held before a newly empaneled jury.[2]
*1200 We find no merit to the issues raised in Jackson's rule 3.850 motion which entitle her to relief.[3] We believe, however, that the question of Jackson's competency to stand trial in 1983 merits brief discussion. Jackson argues that at the time of her trial she was incompetent to stand trial. She contends that her psychiatric evaluation was deficient because her court-appointed psychiatrist failed to conduct a competent and thorough evaluation of her mental condition and thus failed to discover her mental incapacities, specifically that she suffered from post-traumatic stress disorder. She further argues that trial counsel was ineffective for failing to investigate the significance of certain findings contained in the evaluation which, if they had been pursued, would have led to discovery of post-traumatic stress disorder.
Our review of the record discloses that defense counsel requested the trial court to appoint a psychiatric expert to assist him in the preparation of Jackson's defense. On that same day, the trial judge issued an order appointing Dr. James Larson to examine Jackson. The order specifically provided:
The examination will be conducted for the purpose of determining the following:
A. Present competency of the defendant to stand trial.
B. The mental status of the defendant at the time of the alleged offense.
C. The existence of any mental or emotional disturbance or defect on the part of the defendant.
Thus, not only was Dr. Larson ordered by the trial court to examine Jackson for the purpose of assisting counsel in preparing a defense for Jackson, but he was also asked to determine whether Jackson was competent to stand trial. We find that the court-appointed psychiatrist, upon order of the trial court to determine Jackson's competency, examined her for that purpose. He concluded Jackson was competent to stand trial, and, therefore, competent to assist in her defense. Dr. Larson believed at the time he examined Jackson that her inability to recall and discuss certain circumstances of the shooting was due to the ingestion of alcohol and drugs preceding the offense. Counsel was informed of Dr. Larson's medical opinions supporting this conclusion.
There is no requirement that the issue of a defendant's competency must be reopened because the psychiatrist who examined the defendant reached a legitimate conclusion based on the symptoms displayed by the defendant but failed to associate those symptoms with another mental deficiency. Nor is the attorney representing the defendant ineffective for failing to pursue every possible defense based on a particular mental condition. From the information given to counsel by the court-appointed doctor, counsel formulated a defense centered on Jackson's diminished capacity. *1201 The evidence of Jackson's abusive childhood, her abusive marriage, and her alcohol and drug addiction was presented to and considered by the jury during her sentencing proceeding. The additional testimony Jackson now seeks to admit on these points is, perhaps, more detailed than that originally presented at sentencing. Nonetheless, it is essentially cumulative of the prior evidence. We find nothing in the record to support the contention that Jackson's psychiatric evaluation was deficient or that trial counsel rendered ineffective assistance of counsel.
For the reasons stated in this opinion, we affirm the trial court's order denying relief on Jackson's rule 3.850 motion. We grant the petition for writ of habeas corpus, vacate the death sentence, and remand for a new sentencing proceeding before a newly empaneled jury.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] The three remaining issues raised by Jackson are: (1) This Court erred in upholding the aggravating factor that the murder was cold, calculated, and premeditated. This claim was decided on direct appeal and is procedurally barred. (2) This Court erred in failing to apply the statutory mitigating factor of no significant history of prior criminal activity. This claim should have been raised on direct appeal and is also procedurally barred. (3) Appellate counsel was ineffective for failing to raise a claim based on Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). This claim was not preserved for review at the trial level, and appellate counsel cannot be said to have been ineffective for failing to raise it on appeal.
[2] Ordinarily, an issue under Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), should be raised by motion under rule 3.850. However, because this Court had specifically approved the introduction of Sheriff Carson's testimony on direct appeal, and because all the pertinent facts are contained in the original record on appeal, we believe that in this instance the issue may be appropriately considered in the petition for writ of habeas corpus.
[3] The following issues were raised in Jackson's rule 3.850 motion: (1) whether Jackson was denied the right to assistance by competent mental health professionals; (2) whether Jackson was incompetent during her pretrial and trial proceedings; (3) whether trial counsel provided ineffective assistance of counsel; (4) whether the trial court erred in dismissing Jackson's claim that she received ineffective assistance of counsel; (5) whether the state withheld material evidence from Jackson; (6) whether the trial court violated Jackson's rights under the sixth, eighth, and fourteenth amendments of the United States Constitution; (7) whether the findings in the trial court's order denying Jackson's request for an evidentiary hearing were erroneous; (8) whether the trial court erred in refusing to consider Jackson's claim that certain testimony was wrongfully excluded from the capital sentencing proceedings; (9) whether the trial court erred in summarily dismissing Jackson's claim that she was denied an individualized capital sentencing determination; (10) whether Florida's capital sentencing statute is unconstitutional on its face and as applied; (11) whether the trial court violated the principles of Caldwell and denied Jackson a fair sentencing proceeding; (12) whether Jackson's death sentence must be vacated as an unconstitutional deprivation of her rights under the sixth, eighth, and fourteenth amendments to the United States Constitution.