Raleigh **PORTER**, Petitioner,

v.

Richard L. **DUGGER**, Secretary, **Department of Corrections,** Respondent.

No. 85–154–CIV–Ft.M–17.

United States District Court, M.D. Florida, Fort Myers Division.

Nov. 5, 1991.

Martin J. McClain, Capital Collateral Representative—Deputy Chief Asst., Tallahassee, Fla., for petitioner.

Robert J. Landry, Peggy Ann Quince, Tampa, Fla., for respondent.

ORDER GRANTING MOTION FOR LEAVE TO FILE AMENDMENT TO PETITION FOR WRIT OF HABEAS CORPUS AND DENYING RELIEF BASED ON AMENDMENT TO PETITION FOR WRIT OF HABEAS CORPUS

KOVACHEVICH, District Judge.

This cause is before the court on the following:

Dkt. 89 Petitioner's Motion for Leave to File Amendment to Petition for Writ of Habeas Corpus, filed May 16, 1990.

Dkt. 90 Response in Opposition to Petitioner's Motion for Leave to File Amendment to Petition for Writ of Habeas Corpus by Respondent, filed June 5, 1990.

Dkt. 91 Response to Amendment to Petition for Writ of Habeas Corpus by Respondent, filed June 5, 1990.

Dkt. 93 Reply to Response to Amendment by Petitioner, filed July 17, 1990.

Dkt. 97 Petitioner's Supplemental Brief, filed November 15, 1990.

Dkt. 98 Supplemental Brief of Respondent, filed December 7, 1990.

Dkt. 100 Petitioner's Supplemental Brief, filed May 2, 1991.

Dkt. 101 Respondent's Second Supplemental Brief, filed May 30, 1991.

Dkt. 108 Petitioner's Court–Ordered Supplemental Memorandum, filed September 20, 1991.

Dkt. 109 Respondent's Court–Ordered Supplemental Memorandum, filed September 20, 1991.

The Court has carefully considered the positions of Petitioner and Respondent as expressed in the documents listed above. While the Court will grant Petitioner's Motion for Leave to File Amendment to Petition for Writ of Habeas Corpus, the Court is persuaded by the arguments and supporting case law cited by Respondent. Therefore, habeas corpus relief will be denied.

Part I of this opinion deals with Petitioner's Motion for Leave to File Amendment to Petition for Habeas Corpus. The amendment is premised on five new claims, the merits of which are addressed below. The Court finds that none of the individual grounds advanced in the amendment justify granting Petitioner habeas corpus relief. The individual grounds that Petitioner asserts are as follows:

1. The Florida Supreme Court, in proceedings subsequent to *Porter v. State*, 429 So.2d 293 (Fla.1983), made pronouncements that show that the *Porter* trial judge's override of the jury's recommendation of a life sentence was erroneously affirmed.

2. In *Porter v. Dugger*, 559 So.2d 201 (Fla.1990), the Florida Supreme Court barred the presentation of evidence that the death sentence was based on victim impact information. The action of barring the evidence was in direct conflict with that court's holding in *Jackson v. Dugger*, 547 So.2d 1197 (Fla.1989), which removed bars to the presentation of such evidence.

3. The Florida Supreme Court rejected Petitioner's claim that his death sentence violated *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) because that court incorrectly held that *Maynard* does not apply in Florida.

4. The Florida Supreme Court barred Petitioner's burden-shifting claim because the court incorrectly found that *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) does not apply in Florida.

5. The Florida Supreme Court rejected Petitioner's claim that because the judge refused to consider mercy or sympathy in mitigation for Petitioner, his death sentence violated the eighth amendment. Petitioner argues that the rejection of this claim was based on the court's incorrect view that *Penry* does not apply in Florida.

## DISCUSSION

### *Part I*

1. The first new claim Petitioner raises is that recent actions by the Florida Supreme Court constitute new evidence which indicates that the *Porter* trial court's decision to override the jury's recommendation of a life sentence was erroneously affirmed. Specifically, Petitioner quotes two statements made by the Florida Supreme Court in two separate opinions. The first statement Petitioner quotes appears in *Porter v. Dugger*, 559 So.2d at 203. The second statement appears in *Cochran v. State*, 547 So.2d 928, 935 (Fla.1989).

Petitioner asserts that in both cases the Florida Supreme Court expressed the view that under a literal reading of the standard found in *Tedder v. State*, 322 So.2d 908 (Fla.1975) (to sustain sentence of death after jury recommends life, facts suggesting death sentence should be so clear and convincing that virtually no reasonable person could differ), the trial judge's decision to override the jury's recommendation of life imprisonment in Porter's case was erroneously affirmed. *Porter*, 559 So.2d at 203; *Cochran*, 547 So.2d at 935. Thus, Petitioner argues that the statements constitute new evidence that provides the basis for Habeas Corpus relief.

 The first of the Florida Supreme Court's statements that Petitioner discusses appears in *Porter v. Dugger*, 559 So.2d at 203. The *Porter* court said, "Moreover, 'even though the jury override might not

have been sustained today, it is the law of the case.'" *Porter*, 559 So.2d at 203 (citing *Johnson v. Dugger*, 523 So.2d 161, 162 (Fla.1988)). It appears that in making the statement the Florida Supreme Court was merely quoting dictum from one of its previous decisions. *See Johnson*, 523 So.2d at 162. Since dictum cannot support habeas relief, Petitioner's reliance on this statement is not persuasive.

The second statement that Petitioner discusses appears in *Cochran v. State*, 547 So.2d at 935 (Erlich, C.J., concurring in part and dissenting in part):

In all of these cases, there was information presented that could conceivably have influenced the jury to recommend life ... *Porter v. State*, 429 So.2d at 296 n. 2 (the mitigating evidence was found by the judge to carry "little or no weight"); .... Thus, a mechanistic application of the *Tedder* dictum would have resulted in reversals of the death sentences in those cases.

This second statement must be read in the context of the entire *Cochran* decision. Justice Erlich, in making the statement was discussing the evolution and application of the *Tedder* standard. The Justice cited several decisions which, had the *Tedder* dictum been applied mechanistically, might have been decided differently. However, in each instance the Justice provided justification for why the standard was not applied mechanistically. Citing *Porter*, 429 So.2d at 296, Justice Erlich stated that the "override [was] proper where [the] jury was probably influenced in favor of life by an *improper* factor." *Cochran*, 547 So.2d at 935 (emphasis in original). The improper factor Justice Erlich was referring to in the present case was the vivid description of death by electrocution given to the jury by Porter's defense attorney during the sentencing phase of the trial.

 This Court agrees with Justice Erlich's opinion that a jury's recommendation is a nonbinding, advisory recommendation to the trial judge who, by statute, is the ultimate sentencer. It further agrees with the Justice that the trial judge should consider the jury's recommendation in light

of all the facts the judge has before him or her at the time of sentencing. As Justice Erlich noted, evidence of which the jury is unaware may also properly enter into the trial judge's sentencing considerations. This Court concurs with the Justice's opinion that if facts known to the trial judge reasonably support a sentence of death, despite a jury recommendation of life imprisonment, the death sentence should be upheld. *Id.*

In *Porter v. State,* 429 So.2d 293, evidence that the trial judge considered which did not come before the jury provided a proper basis for the reviewing court to uphold Petitioner's sentence. This evidence included access to a deposition which indicated, in advance, that Petitioner intended to kill his victims to allow him time to abscond with their automobile. Further, the Florida Supreme Court noted that the jury may have been swayed by defense counsel's "extremely vivid and lurid" description of electrocution. *Id.* at 296. Hence, this Court finds that it was proper to refrain from a mechanistic application of the *Tedder* standard. While the Court acknowledges the confidence placed in Florida juries in making sentencing recommendations, the Court is also aware of the need for a jury override in the proper situation. The Court finds that the sentencing of Raleigh Porter was such a situation.

Therefore, this Court finds that neither of the two statements, nor any other statements made by the Florida Supreme Court in the decisions referred to above, constitute new evidence that would entitle Petitioner to Habeas Corpus relief. Accordingly, Petitioner's first claim is denied.

■ 2. The second new claim Petitioner raises is that the Florida Supreme Court barred the presentation of evidence indicating that Petitioner's death sentence was based on victim impact information. Petitioner asserts that barring evidence of reliance on victim impact information is inapposite to the Florida court's holding in *Jackson v. Dugger,* 547 So.2d 1197 (Fla. 1989) which removed bars to the presentation of such evidence. Again, the Court is not persuaded by Petitioner's argument because Petitioner's reliance on *Jackson* is misplaced.

In *Jackson,* the Florida Supreme Court vacated a death sentence that the jury recommended and the trial judge imposed. During Jackson's trial for the first degree murder of a police officer, the prosecution had offered extensive testimony by a sheriff. During his testimony, the sheriff was asked to state his opinion regarding the victim's reputation among his peers and the effect the victim's death had on the members of the police department and the safety of the community. Defense counsel vigorously objected to the sheriff's testimony.

The sheriff's testimony was held to violate the rule of *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) because the testimony impermissibly focused attention on the victim's character and reputation rather than on the defendant and his crime. The court found that it could not say beyond a reasonable doubt that the *Jackson* jury would have recommended death without the sheriff's victim impact information.

*Jackson* and *Porter* are not analogous for several reasons. First, the trial judge's statements in the present case do not constitute a *Booth* violation like the victim impact testimony did in *Jackson.* At Porter's sentencing hearing, the trial judge stated, "It so happens that Raleigh Porter was tried by a Judge that has a lot more sympathy for the feelings of the victims than he does worry about the sensibilities of the murderer." *Porter v. Dugger,* 559 So.2d at 202 n. 3. No other victim impact evidence was presented.

Second, the *Jackson* jury recommended a sentence of death, while the jury in Porter's case recommended a sentence of life imprisonment. Further, the *Jackson* jury recommended death after hearing extensive victim impact information which constituted a *Booth* violation.

In addition, the *Jackson* court noted that nothing in the *Booth* decision suggests that *Booth* should be applied retroactively to cases where defense counsel did not contemporaneously object to victim impact evidence. *Jackson,* 547 So.2d at 1199. As the

Florida Supreme Court noted in its *Porter* decision, Petitioner's defense counsel failed to raise a contemporaneous objection to the trial judge's remarks. *Porter,* 559 So.2d at 202. Because *Jackson* and *Porter* are not analogous, this Court finds that the Florida Supreme Court did not violate any of the controlling language in *Jackson v. Dugger,* 547 So.2d 1197, when reaching its decision in *Porter v. Dugger,* 559 So.2d 201. Therefore, Petitioner has failed to demonstrate that he is entitled to Habeas relief. Accordingly, this claim is denied.

■ 3. The third new claim Petitioner–Porter raises is that the Florida Supreme Court rejected his claim that his death sentence violated *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) (holding that Oklahoma statute detailing aggravating factor, "especially heinous, atrocious, or cruel" was unconstitutionally vague as applied). Petitioner Porter claims the court incorrectly held that the *Maynard* decision does not apply in Florida. This argument has already been made and rejected in *Smalley v. State,* 546 So.2d 720 (Fla.1989). In *Smalley,* the Florida Supreme Court distinguished the application of Florida's statutory aggravating factor, "especially heinous, atrocious, or cruel" (HAC), from the Oklahoma application of a similarly worded statute. After the *Smalley* court effectively distinguished the Oklahoma statute, the court also noted that the validity of the Florida application of HAC was upheld by the United States Supreme Court in *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

Pursuant to the *Smalley* decision, this Court finds that the Florida Supreme Court's interpretation of the applicability of *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372, to Florida sentencing procedures is entirely correct. Therefore, Petitioner's third argument has no merit. Accordingly this claim is denied.

4. The fourth new claim Petitioner Porter raises is that the Florida Supreme Court incorrectly barred his burden-shifting claim because the court erroneously found that *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct.

2934, 106 L.Ed.2d 256, does not apply in Florida. This Court is not persuaded by Petitioner's argument.

■ Petitioner argues that the Florida Supreme Court misinterpreted *Penry* as being inapplicable to proceedings in Florida. Petitioner's argument is incorrect. The Florida Supreme Court thoroughly discussed the *Penry* decision in *Porter,* 559 So.2d at 204, and distinguished between the Texas sentencing procedures challenged in *Penry* and Florida's sentencing procedures. The Florida Supreme Court pointed out that Florida law dictates that the trial judge decide the sentence after the jury makes a non-binding recommendation. As the Florida Supreme Court explained, Texas law is not like Florida law in that Texas law mandates that the jury decide the sentence of the criminal defendant. This Court adopts the Florida Supreme Court's holding that *Penry* is not applicable to Florida sentencing procedures.

Additionally, in his appeal to the Florida Supreme Court, Petitioner Porter argued that the trial court incorrectly shifted the burden of showing that the death sentence was an inappropriate penalty. The Florida Supreme Court specifically discussed Petitioner's burden shifting argument based on *Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir.1988). The court found that, as a decision of an intermediate federal court, *Adamson* was not applicable retroactively under *Witt v. State,* 387 So.2d 922 (Fla. 1980) *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). This Court is persuaded by the decision and reasoning of the Florida Supreme Court and therefore does not adopt Petitioner's argument. Accordingly, Petitioner's fourth claim is denied.

■ 5. The final new claim Petitioner raises is that the Florida Supreme Court rejected his claim that his death sentence violated the eighth amendment because the judge refused to consider mercy or sympathy for the Petitioner. Petitioner argues that this rejection was based on the incorrect view that *Penry* does not apply in Florida. The Court is not persuaded by this argument.

Florida's sentencing scheme complies with the dictates of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) which require that the sentencer consider any relevant evidence regarding the defendant's character, prior record, or the circumstances surrounding the offense. The *Porter* trial judge complied with this requirement. Therefore, Petitioner's final ground does not raise a valid basis for which Habeas Corpus relief may be granted. Accordingly, this claim is denied.

### Part II

Part II of this opinion addresses Petitioner's and Respondent's first and second Supplemental Briefs and Court-ordered Supplemental Memoranda. After considering Petitioner's supplemental arguments the Court again finds that habeas corpus relief must be denied.

In his two Supplemental Briefs, Petitioner asserts a total of five additional grounds for which he alleges habeas corpus relief should be granted:

1. Petitioner received ineffective assistance of counsel at both of his sentencing hearings.

2. The jury's recommendation of life imprisonment precluded a finding that Petitioner's crime was "heinous, atrocious or cruel" pursuant to *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).

3. The sentencing judge impermissibly considered victim impact evidence, thereby violating the principles set out in *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).

4. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), does not apply to Petitioner's case because the rule announced in *Booth* was dictated by *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) and not a "new rule" as *Teague* defines the term.

5. The eighth amendment violations Porter set out in his petition for habeas corpus and in the amendment cannot be found harmless beyond a reasonable doubt.

6. Meaningful review of Petitioner's sentence in light of the *Parker v. Dugger*, — U.S. —, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991) decision did not occur because mitigating evidence that was not presented at Petitioner's trial could have provided a reasonable basis for the sentence of life imprisonment.

1. The first argument Petitioner raises in his Supplemental Briefs is that he received ineffective assistance of counsel at both of his sentencing hearings. Ineffective assistance of counsel claims are governed by the Supreme Court's two-part test set out in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Under that test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Two attorneys, Widmeyer and Jacobs, represented Petitioner during the penalty phase of his first sentencing hearing in 1978. Petitioner asserts that Steven Widmeyer was ineffective because he did not know about the possibility of a jury override, and as a result, did not present mitigating evidence. Petitioner argues that the mitigating evidence was necessary to support a reasonable basis for the jury's life recommendation.

This Court held an evidentiary hearing on the issues of: (1) ineffective assistance of counsel at both of Petitioner's sentencing hearings; and (2) possible conflicts of interest. This hearing was held in October, 1988, pursuant to an order by the Eleventh Circuit Court of Appeals in *Porter v. Wainwright*, 805 F.2d 930 (11th Cir.1986).

■ It is evident that Petitioner did not mention his other attorney, Robert Jacobs, during the pendency of the first sentencing hearing because Jacobs' testimony at the

evidentiary hearing established that Petitioner received effective assistance of counsel. Mr. Jacobs, at the time of Petitioner's first sentencing, was the Chief Assistant Public Defender in Ft. Myers. At the evidentiary hearing, Jacobs testified that he functioned as second chair during Petitioner's trial but that his responsibility was to conduct the penalty phase of the trial for Petitioner. Tr. of Evid.Hear.Vol. V, p. 31. Mr. Jacobs specifically stated that he was aware of the possibility of a jury override in Petitioner's case. *Id.* at 51. He further explained that he knew Petitioner's trial judge had overridden several jury recommendations of life imprisonment. *Id.* at 49–50.

On the issue of introducing mitigating evidence at the penalty phase of Petitioner's first sentencing, Mr. Jacobs recalled that he was aware that non-statutory mitigating evidence could be presented. *Id.* at 38. He specifically asked for jury instructions stating that any evidence of mitigation could be considered. *Id.* at 51. Further, mitigating evidence was presented at Petitioner's sentencing. In his findings in support of the death sentence, the judge specifically referred to two mitigating factors: (1) Porter's age; and (2) the fact that Porter had a wife and two children.

 Petitioner apparently believes (but does not argue in his Supplemental Brief) that if his family members had testified at the first sentencing, mitigating evidence regarding Petitioner's childhood physical and sexual abuse would have been elicited. However, Mr. Jacobs' testimony established that the defense made a conscious, tactical decision not to present testimony about Petitioner's background. Jacobs stated that the defense team was concerned that if Petitioner's family members took the stand, testimony about Petitioner's prior criminal activity would come into evidence. *Id.* at 43. Reasonable tactical decisions cannot form a basis for a claim of ineffective assistance of counsel. *Stanley v. Zant,* 697 F.2d 955, 966 (11th Cir.1983), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).

This Court notes with chagrin that neither Petitioner nor Respondent briefed a discussion of Jacobs' testimony at the evidentiary hearing. Jacobs' statements clearly indicate that Porter received effective assistance of counsel during his first sentencing. Thus, Petitioner cannot meet the required showing under the first prong of the *Strickland* test. Accordingly, the Court is not persuaded by this argument.

In his Supplemental Brief, Petitioner subsequently turns to the argument that he experienced ineffective assistance of counsel at his second sentencing hearing. Petitioner claims that Mr. Woodard, his attorney at the second sentencing hearing, was generally unaware of what evidence constituted mitigation. Therefore, Petitioner claims that since Mr. Woodard did not know what constituted mitigating evidence, he failed to investigate Petitioner's background and to introduce mitigating evidence at the sentencing. This claim is erroneous in light of the record of the evidentiary hearing before the Court.

At the evidentiary hearing held by this Court in October, 1988, Mr. Woodard stated that he was aware of the admissibility of non-statutory mitigating evidence. Tr. of Evid.Hear.Vol. III, p. 29. Woodard explained that he asked Petitioner if there were anything in his background that would be helpful to his case. Woodard said that Petitioner indicated to him that the only person with potential knowledge of mitigating evidence was his mother. *Id.* at 61. As Respondent noted, prior to the second sentencing hearing, Mr. Woodard moved to present background and character testimony from Petitioner's family in mitigation. In his motion, Woodward also stated that any evidence of mitigation must be considered by the court before a death sentence can be imposed. Further, Mr. Woodard listed Petitioner's mother as a witness whom he expected to call at the second sentencing hearing. However, Woodard also stated that when the time for the resentencing hearing drew near, Petitioner insisted that his mother not be contacted, nor brought to Florida to testify. *Id.* at 61–63.

■ At the evidentiary hearing, Woodard acknowledged that he was aware of Petitioner's criminal background. Additionally, he recognized that it would have been harmful to Petitioner to present family members at the sentencing if doing so would mean disclosure of other criminal activity. Testimony from Petitioner's mother could have led to the introduction of Porter's history of criminal activity. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.

■ In the present case, Woodard knew of Petitioner's prior criminal activity. As the Florida Supreme Court noted, "following such an obvious awareness of the possibility of that form of mitigating evidence and circumstance, . . . the failure to produce it [Mrs. Porter's testimony] then [at resentencing] was a result of the considered and . . . [tactical] decision as opposed to one of negligence." *Porter v. State*, 478 So.2d 33, 35 (Fla.1985) (quoting the trial court). Since Woodard made a reasonable tactical decision not to present mitigating evidence, Petitioner cannot meet the first prong of the test for ineffective assistance of counsel which requires that counsel be deficient. *Stanley v. Zant*, 697 F.2d 955, 966 (11th Cir.1983), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).

Even assuming that Petitioner could meet the first prong of *Strickland*, his claim would be foreclosed because he cannot meet the second prong of *Strickland* and establish that his counsel's performance prejudiced his case. The Court finds that the caselaw Petitioner cites to support his claim of ineffective assistance of counsel at the resentencing is unpersuasive. However, the Court is persuaded to Respondent's view by a case directly on point with this issue cited by Respondent, *Lusk v. Dugger*, 890 F.2d 332 (11th Cir.1989).

In *Lusk*, a prison inmate was convicted of first degree murder. The trial judge overrode the jury's life recommendation finding that four statutory aggravating factors were present and that no mitigating factors weighed in favor of the defendant. The defendant then petitioned for collateral relief stating he had ineffective assistance of counsel at his sentencing. An evidentiary hearing was held at which the defendant introduced evidence of, among other things, troubled relationships with his father, stays in childrens' homes, psychiatric problems, and periods of neglect and abuse.

The *Lusk* defendant argued that had his counsel presented mitigating evidence, a reasonable basis for the jury's life recommendation would have been established, thereby precluding a jury override.[1] The Eleventh Circuit held that Lusk had not fulfilled the second prong of the *Strickland* test because he could not establish that he was truly prejudiced by the failure to introduce mitigating evidence. The appellate court found that even if the evidence had been introduced at the defendant's sentencing, his death sentence "would not be affected due to the presence of significant aggravating factors." *Lusk*, 890 F.2d at 338.

■ Petitioner's ineffective assistance of counsel claim regarding Woodard is similar to the claim made in *Lusk*. Petitioner asserts that had he been able to introduce evidence of his background at his second sentencing, a life recommendation would have been supported. However, in Petitioner's case, the judge found four aggra-

---

1. To quote the Eleventh Circuit:

This contention is inextricably linked to Lusk's interpretation of *Tedder* and its progeny. Lusk contends that if there is *any* basis to support a jury recommendation of life, then the trial judge must abandon his duty to balance aggravating factors against mitigating factors in determining sentence and accept that recommendation.

It is now clear that the Florida courts do not so interpret *Tedder*. The Florida Supreme Court recently held in *Pentecost v. State*, 545 So.2d 861 (Fla.1989) that such an understanding of the jury override rule was incorrect.

*Lusk*, 890 F.2d at 337 n. 4.

vating factors just as the judge found in *Lusk*. Therefore, since *Lusk* is controlling precedent, this court finds that even if Petitioner could meet the first prong of the *Strickland* test—that Woodard was deficient, Petitioner cannot meet the second prong—that he was prejudiced by counsel's performance. Accordingly, the Court is not persuaded by this argument.

At this point, the Court believes it is appropriate to discuss the evidentiary hearing held to determine, in part, whether Petitioner–Porter's attorneys at the first sentencing were deficient. Petitioner's cause was reopened for proceedings consistent with the remand order from the Eleventh Circuit. A portion of the Eleventh Circuit's remand regarded testimony on a conflict of interest issue surrounding Petitioner's attorney, Mr. Widmeyer. This conflict of interest allegedly arose because Mr. Widmeyer represented a witness who testified against Petitioner at his trial. The witness, Mathe Thomas, was a fellow-prisoner of Petitioner's who asserted at the trial that Petitioner confessed his guilt to him regarding the murders.

On September 1, 1978, Thomas' bail was reduced pursuant to a stipulation entered into by the prosecutor and Mr. Widmeyer. That same day, Mr. Widmeyer withdrew as counsel for Thomas. Petitioner represented to the Eleventh Circuit that at his trial, Widmeyer labored under a conflict of interest and failed to disclose this conflict to Petitioner. As a result, Widmeyer was inhibited from vigorously defending Petitioner.

The Eleventh Circuit wrote, "The state is correct in asserting that Porter has failed to prove an actual conflict adversely affecting Widmeyer's performance. However, without an evidentiary hearing, he has had no opportunity to prove this claim." *Porter v. Wainwright*, 805 F.2d at 940. This Court allowed presentation of evidence at the hearing on the conflict of interest issue. However, since Petitioner provided no argument to support his conflict of interest claim, this Court deems the issue abandoned. *Ballard v. Johnson*, 821 F.2d 568, n. 1 (11th Cir.1987).

2. The second argument Petitioner raises in his Supplemental Briefs is a restatement of his *Maynard* claim. (*See Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372). This claim was discussed and denied in Part I, Section 3 of this order. Nothing in Petitioner's Supplemental Briefs has moved the Court to reconsider its decision to deny this claim. The Eleventh Circuit denied Petitioner's similarly worded claim in *Porter v. Wainwright*, 805 F.2d at 942; thus, any further discussion on this claim is procedurally barred. Accordingly, the Court is not persuaded by this argument.

3. The third argument Petitioner raises in his Supplemental Briefs is also a restatement of a previous claim—that the Petitioner's sentence was based on victim impact information. This claim was discussed and denied in Part I, Section 2 of this order. Again, this Court is not persuaded by the additional arguments in Petitioner's Supplemental Briefs.

■ 4. The fourth argument Petitioner raises in his Supplemental Briefs is that the retroactivity rule of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) does not apply to his case. This rule provides that new constitutional rules of criminal procedure generally should not be applied retroactively to cases on collateral review. However, a rule may be retroactive if it is a "new rule" that: (1) places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or (2) requires the observance of "those procedures that ... are 'implicit in the concept of ordered liberty.'" *Id.* 109 S.Ct. at 1073 (citations omitted).

Petitioner's *Teague* claim is actually tied to his victim impact claim because Petitioner asserts that the rule in *Booth* is not a "new rule" as defined by *Teague* and therefore, that *Booth* applies retroactively to his case. Petitioner also contends that the rule in *Maynard* is not a "new rule" and therefore, *Maynard* applies retroactively to his case.

As noted in Part I Section 2 of the order, Petitioner's claim that he was barred from

presenting evidence regarding the use of victim impact information was without merit. Further, this Court has found that victim impact information was not impermissibly used in Petitioner's sentencings. *See* Part I Section 2.

In Part I Section 3 of the order, the Court held that *Maynard* is inapplicable to Petitioner's case because Florida's interpretation of "heinous, atrocious, or cruel" has been upheld by the United States Supreme Court in *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Therefore, since violations of the rules in *Booth* or *Maynard* are not applicable to the case at bar, this Court need not decide whether the rules are retroactive under the standard set forth in *Teague*. Therefore, the Court is not persuaded by this argument.

5. The fifth argument Petitioner raises in his Supplemental Briefs is that an eighth amendment error occurred during his sentencing and that the error is not harmless beyond a reasonable doubt. Petitioner did not specifically refer to any alleged eighth amendment violations in his Supplemental Briefs. Instead, he stated that the eighth amendment errors detailed in his petition are not harmless beyond a reasonable doubt. Petitioner may be referring to his *Maynard* claim or his claim based on *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140. Petitioner's *Maynard* claim is without merit because the Court has previously denied all eighth amendment *Maynard* claims.

Petitioner raised an eighth amendment claim based on *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140, in his appeal to the Eleventh Circuit. This claim is also without merit because the Eleventh Circuit denied it as being procedurally barred. *Porter v. Wainwright*, 805 F.2d at 942. Therefore, the Court is not persuaded by this argument.

6. The sixth argument Petitioner raises in his Supplemental Briefs is that he did not receive meaningful appellate review in light of the holding in *Parker v. Dugger*, —— U.S. ——, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991). After considering Petitioner's and Respondent's arguments, this Court finds that Petitioner's case is factually distinguishable from *Parker*, and that Petitioner may not avail himself of a claim based on that case.

In *Parker*, the defendant received two jury recommendations of life imprisonment for two murders. The trial judge overrode the sentence for one of the murders after finding six statutory aggravating circumstances. On appeal, the Florida Supreme Court struck two of the aggravating circumstances, finding that there was insufficient evidence to support them. *Parker v. State*, 458 So.2d 750, 754 (Fla.1984), *cert. denied* 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985).

■ The Supreme Court noted that Florida is a "weighing state." A weighing state is one in which the death penalty may be imposed only where specified aggravating circumstances outweigh all mitigating circumstances. *Parker v. Dugger*, 111 S.Ct. at 738 (citing Fla.Stat. § 921.141(3) (1985)). "In a weighing state, when a reviewing court strikes one or more of the aggravating factors on which the sentencer relies, the reviewing court may, consistent with the Constitution, reweigh the remaining evidence or conduct a harmless error analysis." *Parker v. Dugger*, 111 S.Ct. at 738 (citing *Clemmons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990)). The *Parker* court performed a reweighing analysis and found that Parker's sentence was arbitrary and capricious.

*Parker* is factually distinguishable from Petitioner's case. In *Porter v. State*, 429 So.2d 293, the Florida Supreme Court did not strike any aggravating factors found by the trial judge. Thus, the Florida Supreme Court did not have to reweigh the evidence or perform a harmless error analysis. Since a reweighing was not necessary in Petitioner's case, a claim based on *Parker* must fail. Accordingly, the Court is not persuaded by this argument.

It should be noted that both Petitioner and Respondent submitted Court-ordered memoranda. The arguments in the memoranda did not convince the Court to hold otherwise on any of the claims or arguments discussed above.

Accordingly, Petitioner's Motion for Leave to File Amendment to

Petition for Writ of Habeas corpus is GRANTED. Habeas Corpus relief sought is DENIED.

DONE AND ORDERED.