**Raleigh PORTER, Petitioner,**

v.

**Richard L. DUGGER, Secretary, Department of Corrections, Respondents.**

**No. 85–154–Civ–FtM–17.**

United States District Court, M.D. Florida, Ft. Myers Division.

Oct. 30, 1992.

Martin J. McClain, Capital Collateral Representative, Deputy Chief Asst., Tallahassee, Fla., for petitioners.

Robert J. Landry, Peggy Ann Quince, Tampa, Fla., for respondents.

KOVACHEVICH, District Judge.

### ORDER

Petitioner is a convicted state prisoner under sentence of death. On October 26, 1985, this Court denied Petitioner's petition for federal habeas corpus relief. That same day, the Eleventh Circuit Court of Appeals granted a stay of Petitioner's execution pending appeal.

The Eleventh Circuit Court of Appeals remanded this case to the District Court for an evidentiary hearing on the issues of

1) whether Porter's attorneys at his original sentencing, Widmeyer and Jacobs, were unconstitutionally ineffective for failing to investigate into and present mitigating character evidence; and 2) whether Attorney Widmeyer had an actual conflict of interest that adversely affected Widmeyer's representation of Petitioner. *Porter v. Wainwright*, 805 F.2d 930, 937, 940 (11th Cir.1986). In addition, the Appellate Court instructed that "If the district court finds that Porter's original sentencing lawyers were effective, then the district court must address Porter's claim that his second sentencing lawyer, Wayne Woodard, was ineffective." *Id.* at 937.

The District Court held an evidentiary hearing in October, 1988 on the issues of 1) the ineffective assistance of counsel at *both* of Petitioner's sentencing hearings; and 2) the possible conflict of interest. Petitioner and Respondent filed proposed findings of fact and conclusions of law following the hearing.

Subsequently, on May 16, 1990, Petitioner filed a motion for leave to file an amendment to his petition for writ of habeas corpus. (Doc. No. 89), and several supplemental briefs. Likewise, Respondents filed a response to Plaintiff's motion for leave to file amendment to petition for writ of habeas corpus and several supplemental memoranda in response to Plaintiff's supplemental memoranda. (Doc. Nos. 90, 91, 93, 97, 98, 100, 101, 108, 109). Although Petitioner asserted, in his supplemental briefs, a total of five additional grounds for which he requested habeas corpus relief should be granted, including an argument that he received ineffective assistance of counsel at both of his sentencing hearings, Petitioner did not refer to Attorney Jacobs in his supplemental briefs. Likewise, Respondents did not mention attorney Jacobs in their supplemental responsive filings to refute Plaintiff's claim of ineffective assistance of counsel. In addition, Petitioner did not refer to his conflict of interest claim in any of the supplemental briefs.

On November 4, 1991, 777 F.Supp. 934, this Court entered an order granting Petitioner's motion for leave to file an amendment to his petition for writ of habeas corpus, but denying habeas relief. The Court found that Petitioner had received effective assistance of counsel at his first sentencing hearing. (*See* Order Granting Motion for Leave To File Amendment to Petition for Writ of Habeas Corpus and Denying Relief Based on Amendment to Petition for Writ of Habeas Corpus, p. 17 (referring to Tr. of Evidentiary Hr'g, Vol. V., Docket No. 64 at 31, 38, 43, 49–50, 51: "Jacobs' statements clearly indicate that Porter received effective assistance of counsel during his first sentencing.")) The Court stated, in the order of November 4, 1991, that "This Court notes with chagrin that neither Petitioner nor Respondent briefed a discussion of Jacobs' testimony at the evidentiary hearing." Further, the Court deemed the conflict of interest issue abandoned because Petitioner had failed to refer to the claim in any supplemental briefs. (Order at 23).

Petitioner filed a motion to alter or amend judgment on November 21, 1991, urging the Court to reconsider its Order denying habeas relief in light of the arguments presented in Petitioner's proposed findings of fact and law pursuant to the evidentiary hearing. Respondents filed a motion to alter or amend judgment and motion for clarification urging the Court to take note of the fact that respondent had briefed Attorney Jacobs' testimony at the hearing in their Proposed Findings of Fact and Conclusions of Law and Memorandum of Law subsequent to the evidentiary hearing. The Court will grant Petitioner's and Respondent's motion to the extent that the Court will vacate its order of November 4, 1991.

## DISCUSSION

### Part I

Part I of this opinion deals with the evidentiary hearing held in October, 1988, on the issues of 1) the ineffective assistance of counsel at *both* of Petitioner's sentencing hearings; and 2) the possible conflict of interest.

### 1. The issue of ineffective assistance of counsel at both the first and second sentencing hearings

▮ Petitioner claims that he was denied effective assistance of counsel at *both* sentencing hearings. Petitioner claims that, at the initial sentencing hearing, Widmeyer's and Jacob's assistance was ineffective due to their failure to research and investigate evidence of mitigating factors. (Petitioner's Proposed Findings of Fact and Conclusions of Law, Docket No. 72 at 25.) Specifically, Petitioner asserts that Widmeyer and Jacobs failed to introduce evidence of a difficult childhood and family relations. *Id.* at 6. Petitioner also asserts that Widmeyer and Jacobs failed to introduce evidence of his juvenile incarceration as mitigating evidence. *Id.*

Essentially, Petitioner's claim of ineffective assistance of counsel is based on Counsels' alleged failure to investigate Petitioner's family background and introduce evidence of that background to mitigate the circumstances surrounding Petitioner's conviction. Petitioner claims that Counsel possessed mitigating evidence regarding a difficult childhood, an abusive stepfather, illegitimacy, physical and sexual abuse, and juvenile incarceration, but failed to introduce this evidence. *Id.* at 8–9. Consequently, Counsel allegedly failed to conduct an adequate and reasonable investigation into Petitioner's background. *Id.* at 7. As a result, Counsel allegedly was completely and totally unprepared for the trial court's override of the jury's recommended life sentence. *Id.* at 9.

Petitioner claims that at the second sentencing hearing, Attorney Woodard also failed to research and introduce information regarding Petitioner's family background as mitigating evidence. *Id.* at 13. Petitioner asserts that Woodard failed to contact his mother, even after obtaining the court's permission to present additional mitigating evidence and listing Petitioner's mother as a witness. *Id.* at 10. Petitioner claims that he was denied effective assistance of counsel as a result of Woodard's alleged failure to investigate Petitioner's family background. Petitioner alleges that

the results of such an investigation would have established a reasonable basis for the life recommendation. *Id.* at 38.

Again, Petitioner claims that Woodard's assistance was ineffective because he neglected to inquire into Petitioner's background, despite having access to the public defender's case file. *Id.* at 12. This case file contained a psychiatric report indicating that Petitioner's family life was "less than ideal physically, financially and emotionally." *Id.* Consequently, Petitioner claims that Counsel's performance at the second sentencing hearing, in addition to the first, lacked both reasonable investigation and informed decision-making. *Id.* at 13.

In sum, Petitioner claims that Counsels' failure to conduct reasonable research into his family background and the failure to introduce mitigating evidence in Counsels' possession at *both* sentencing hearings constituted ineffective assistance of counsel. Further, Plaintiff claims that Counsel's failure to make informed decisions at the second sentencing hearing constituted ineffective assistance of counsel. Petitioner claims that, at both hearings, Counsels' ineffective assistance precluded a reasonable probability either that the trial judge would not override the life sentence or that the Florida Supreme Court would reverse the override.

In response, Respondent claims that Widmeyer's and Jacob's assistance at the initial sentencing hearing was not ineffective because the decision not to introduce information regarding Petitioner's family background as mitigating evidence was a tactic intended to portray the Petitioner as favorably as possible. (Respondent's Proposed Findings of Fact and Conclusions of Law, Docket No. 69 at 2.) Respondent asserts that the introduction of Petitioner's family background would have opened the door to Petitioner's history of criminal activity. *Id.* Further, Respondent claims that the failure to conduct an investigation into Petitioner's family background was not unreasonable because Counsel investigated the availability of insanity as a defense at the guilt and penalty phase, Counsel and Petitioner dis-

cussed Petitioner's family situation, and Counsel was aware that non-statutory mitigating circumstances could be introduced. *Id.* at 1. In fact, a special jury instruction on the latter factor was requested. *Id.*

Consequently, Respondent claims that the attorney's tactic at the initial sentencing hearing was to portray Petitioner in a good light, without a criminal history, and to give the jury a vivid description of an electrocution. *Id.* at 2. This tactic included arguing to the jury that Petitioner did not have a significant criminal history. *Id.* Respondent urges that the introduction of Petitioner's family background would have negated this argument. *Id.* Respondent claims that this strategy contributed to the jury's recommendation of a life sentence rather than the death penalty. *Id.*

Respondent also claims that Counsel's assistance at the second sentencing hearing was effective because Woodard was aware of the law respecting the introduction of mitigating factors and specifically requested the trial court's permission to introduce evidence of Petitioner's family background. *Id.* at 5. However, Respondent asserts that Petitioner indicated that there was no mitigating evidence in his family background. *Id.* Further, Respondent claims that Petitioner specifically requested that Woodard not call his mother as a witness. *Id.*

Consequently, Respondent asserts that Woodard was aware of Petitioner's criminal history and did not want Petitioner's relatives to make this history known to the court. *Id.* As an example, Respondent cites the testimony of Petitioner's brother, who admitted (after first denying) that he had participated in burglaries in Florida with the Petitioner. *Id.* at 6. Thus, Respondent claims that Counsel at *both* sentencing hearings made informed decisions regarding the exclusion of Petitioner's family background. *Id.* at 7–8. Respondent asserts that, in light of the specific tactic of portraying Petitioner as a person without a criminal history, this decision was reasonable. *Id.*

The Court is convinced by Respondent's arguments that habeas corpus relief must be denied. Ineffective assistance of counsel claims are governed by the Supreme Court's two-part test set out in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Under that test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

This standard requires this Court to "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. at 2066. The Court has determined after evaluating the testimony presented at the evidentiary hearing and carefully weighing the arguments and cited case law, that Petitioner's arguments regarding either sentencing hearing fail to meet the *Strickland* standard.

The first prong of the *Strickland* test requires Petitioner to demonstrate that Counsels' representation was so deficient as to violate the Sixth Amendment. This Court does not deny that the failure to investigate and to introduce possible mitigating evidence as the result of incompetent preparation could by itself satisfy the first prong of *Strickland.* However, this Court is not persuaded by Petitioner's argument that Counsels' performance as a whole, or through individual errors, falls below an objective standard of reasonableness. *U.S. v. Cronic,* 466 U.S. 648, 657 n. 20, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984). Reasonable tactical decisions cannot form a basis for a claim of ineffective assistance of counsel. *Stanley v. Zant,* 697 F.2d 955, 966 (11th Cir.1983), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984). Accordingly, habeas corpus relief must be denied if Petitioner's

Counsel made a reasonable tactical decision not to introduce Petitioner's family background as mitigating evidence.

The evidence presented at the evidentiary hearing indicates that Counsel at both sentencing hearings made an informed tactical decision not to introduce evidence of Petitioner's family background that included an extensive criminal history. In fact, Counsels' specific intention at the first sentencing hearing was to portray Petitioner in the best light possible. (Tr. of Evidentiary Hr'g, Vol. IV, Docket No. 60 at 52.) As a result of this tactic, Counsel obtained the best possible result, a life sentence. *Id.* at 55.

Further, challenging this tactic on the basis that the trial court overrode that life sentence is not reasonable. The trial Court's override does not negate the effectiveness of Counsels' informed decision not to present evidence regarding Petitioner's family background. This omission was an informed strategic decision, not the result of Counsels' ignorance or perception of Florida law. *Thomas v. Wainwright,* 767 F.2d 738, 746 (11th Cir.1985).

The evidence further indicates that Counsel at the second sentencing hearing also made an informed strategic decision not to introduce evidence of Petitioner's family background. Counsel specifically considered calling Petitioner's mother as a mitigating witness. (Tr. of Evidentiary Hr'g, Vol. IV, Docket No. 63 at 60–61.) The ultimate decision not to do so was a reasonable tactic that may not be challenged in hindsight. This decision was not an example of Counsel unreasonably relying on his client for legal advice. *See U.S. v. Goodwin,* 531 F.2d 347, 351 (6th Cir.1976) (holding that the representation afforded Defendant at preliminary hearing did not come up to the level of representation required by the Sixth Amendment where Counsel permitted Defendant to make incriminating statements based upon Defendant's assertion that his testimony would "straighten the whole thing out," and where Counsel had done no research nor explained to Defendant the elements of the crime with which he was charged). Accordingly, this

Court finds that Petitioner has not met the first prong of *Strickland.*

Further, even if the Court assumes that Counsels' performance was deficient at either of the two sentencing hearings, Petitioner cannot demonstrate that this deficiency prejudiced the defense. In establishing prejudice, Petitioner must show "that there is a reasonable probability that, but for counsels' unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Washington,* 466 U.S. at 694, 104 S.Ct. at 2068.

As a result of their tactic at the first sentencing hearing, Widmeyer and Jacob successfully persuaded the same jury that had just convicted Petitioner of two gruesome, calculated and premeditated murders to recommend life imprisonment. (Tr. of Evidentiary Hr'g, Vol. IV, Docket No. 63 at 55.) This recommendation was the best possible sentence under the circumstances. *Id.* The fact that the jury recommended life imprisonment precludes a finding that Counsels' assumed deficiency prejudiced Petitioner's sentencing.

Further, this Court rejects the assumption that Woodard's failure to present evidence of Petitioner's family background through his mother's testimony at the second sentencing hearing would have changed the balance of the aggravating and mitigating circumstances. *Washington,* 466 U.S. at 695, 104 S.Ct. at 2069. The Florida Supreme Court specifically stated that "[i]t is at least as likely that introducing this material would have damaged Porter as that it would have helped him." *Porter v. State,* 478 So.2d 33, 35 (Fla.1985). In light of the three aggravating factors found by the trial judge, mitigating background evidence would not have affected the trial judge's decision at the re-sentencing. *Francois v. Wainwright,* 763 F.2d 1188 (11th Cir.1985) (holding that evidence of Defendant's impoverished childhood would not have changed sentencing outcome in light of aggravating circumstances).

Accordingly, this Court finds that in respect to his claim of ineffective assistance of counsel at *both* sentencing hearings, Petitioner has not satisfied the *Strickland* test. First, Petitioner has not demonstrated that Counsels' performance was deficient so that Petitioner was denied his Sixth Amendment guarantee of counsel. Second, Petitioner has not demonstrated that this alleged deficiency prejudiced the outcome of the sentencing hearings. Consequently, this Court finds that Petitioner was not denied effective assistance of counsel at either sentencing hearing.

### 2. *Conflict of Interest*

 Petitioner also alleges that he was denied effective assistance of counsel at trial because of a purported conflict of interest on the part of his trial counsel, Widmeyer. (Petitioner's Proposed Findings of Fact and Conclusions of Law, Docket No. 72 at 40.) While incarcerated, Petitioner allegedly confessed and boasted to Matha Thomas that he had killed the two victims. (Tr. of Evidentiary Hr'g, Vol. IV, Docket No. 63 at 117.) Widmeyer, a public defender, had previously been appointed to represent Thomas. *Id.* at 55–56. After Widmeyer was also assigned to represent Petitioner, he learned of Thomas' statement regarding Petitioner's alleged confession and informed the Court. On September 1, 1978, Thomas' bail was reduced pursuant to a stipulation entered into by the prosecutor and Mr. Widmeyer. Subsequently, Mr. Widmeyer was allowed to withdraw as counsel for Thomas. *Id.* at 56.

Petitioner argues that this Court should grant habeas corpus relief because he was denied his Sixth Amendment right to "conflict-free counsel." (Petitioner's Proposed Findings of Fact and Conclusions of Law, Docket No. 72 at 39.) Petitioner asserts that an actual conflict existed because Widmeyer represented both Thomas and him. *Id.* at 42. Petitioner claims that as a result of this alleged conflict, Widmeyer did not vigorously cross-examine Thomas regarding an alleged deal Thomas received from the prosecution for his testimony. *Id.* Consequently, Petitioner argues that Wid-

meyer's conflict of interest entitles him to habeas corpus relief. *Id.*

Respondent contends that Petitioner has not established that Widmeyer operated under an actual conflict of interest affecting his performance in Petitioner's representation. (Respondent's Proposed Findings of Fact and Conclusions of Law, Docket No. 69 at 8.) Respondent asserts that Widmeyer introduced probative evidence and advanced plausible arguments. *Id.* Petitioner has not demonstrated that another lawyer would have used a better strategy than Widmeyer used. *Id.* at 3. Consequently, Respondent argues that Petitioner was not denied effective assistance of counsel based upon any actual conflict of interest. *Id.*

This Court finds that Petitioner has failed to demonstrate an actual conflict of interest. Habeas corpus relief may not be premised upon a mere hypothetical conflict. *Stevenson v. Newsome*, 774 F.2d 1558, 1561 (11th Cir.1985) (the mere possibility of a conflict does not rise to the level of a Sixth Amendment violation), *cert. denied*, 475 U.S. 1089, 106 S.Ct. 1476, 89 L.Ed.2d 731 (1986). Petitioner's contention that evidence of a conflict existed because Widmeyer failed to cross-examine Thomas regarding the continuation of Thomas' trial or benefits Thomas expected to receive as a result of his testimony is unfounded. Thomas testified at the evidentiary hearing that he was not promised anything in his case for testifying against Petitioner, including special or better treatment. (Tr. of Evidentiary Hr'g, Vol. IV, Docket No. 63 at 128.)

Further, Widmeyer testified that he did not refrain from asking Thomas any questions on cross-examination due to his prior representation of Thomas. *Id.* at 56. Consequently, this Court is not persuaded that Widmeyer inadequately cross-examined Thomas or that an actual conflict of interest existed. Accordingly, this Court finds that Petitioner was not denied effective assistance of counsel because of an actual conflict.

This Court finds that Petitioner was not denied his Sixth Amendment right to effective assistance of counsel. After evaluating the testimony presented at the evidentiary hearing and carefully weighing the arguments and cited case law, this Court finds that Petitioner's counsel at *both* sentencing hearings were effective and that an actual conflict of interest did not exist.

## Part II

Part II of this opinion deals with Petitioner's Motion for Leave to File Amendment to Petition for Habeas Corpus. The amendment is premised on five new claims, the merits of which are addressed below. This Court finds that none of the individual grounds advanced in the amendment justify granting Petitioner habeas corpus relief. The individual grounds that Petitioner asserts are as follows:

1. The Florida Supreme Court, in proceedings subsequent to *Porter v. State*, 429 So.2d 293 (Fla.1983), made pronouncements that show that the *Porter* trial judge's override of the jury's recommendation of a life sentence was erroneously affirmed.

2. In *Porter v. Dugger*, 559 So.2d 201 (Fla.1990), the Florida Supreme Court barred the presentation of evidence that the death sentence was based on victim impact information. The act of barring the evidence was in direct conflict with that court's holding in *Jackson v. Dugger*, 547 So.2d 1197 (Fla.1989), which removed bars to the presentation of such evidence.

3. The Florida Supreme Court rejected Petitioner's claim that his death sentence violated *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) because that court incorrectly held that *Maynard* does not apply in Florida.

4. The Florida Supreme Court barred Petitioner's burden-shifting claim because the court incorrectly found that *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) does not apply in Florida.

5. The Florida Supreme Court rejected Petitioner's claim that because the judge refused to consider mercy or sympathy in mitigation for Petitioner, his death sentence violated the Eighth Amendment. Petitioner argues that the rejection of this claim was based on the court's incorrect view that *Penry* does not apply in Florida.

1. The first new claim Petitioner raises is that recent actions by the Florida Supreme Court constitute new evidence which indicates that the *Porter* trial court's decision to override the jury's recommendation of a life sentence was erroneously affirmed. Specifically, Petitioner quotes two statements made by the Florida Supreme Court in two separate opinions. The first statement Petitioner quotes appears in *Porter v. Dugger*, 559 So.2d at 203. The second statement appears in *Cochran v. State*, 547 So.2d 928, 935 (Fla.1989).

Petitioner asserts that in both cases the Florida Supreme Court expressed the view that under a literal reading of the standard found in *Tedder v. State*, 322 So.2d 908 (Fla.1975) (to sustain sentence of death after jury recommends life, facts suggesting death sentence should be so clear and convincing that virtually no reasonable person could differ), the trial judge's decision to override the jury's recommendation of life imprisonment in Porter's case was erroneously affirmed. *Porter*, 559 So.2d at 203; *Cochran*, 547 So.2d at 935. Thus, Petitioner argues that the statements constitute new evidence that provides the basis for habeas corpus relief.

The first of the Florida Supreme Court's statements that Petitioner discusses appears in *Porter v. Dugger*, 559 So.2d at 203. The *Porter* court said, "[e]ven though the jury override might not have been sustained today, it is the law of the case." *Porter*, 559 So.2d at 203 (citing *Johnson v. Dugger*, 523 So.2d 161, 162 (Fla.1988)). It appears that in making the statement the Florida Supreme Court was merely quoting dictum from one of its previous decisions. *See Johnson*, 523 So.2d at 162. Since dictum cannot support habeas relief, Petitioner's reliance on this statement is not persuasive.

The second statement that Petitioner discusses appears in *Cochran v. State*, 547

So.2d at 935 (Erlich, C.J., concurring in part and dissenting in part):

> In all of these cases, there was information presented that could conceivably have influenced the jury to recommend life ... *Porter v. State,* 429 So.2d at 296 n. 2 (the mitigating evidence was found by the judge to carry "little or no weight"); .... Thus, a mechanistic application of the *Tedder* dictum would have resulted in reversals of the death sentences in those cases.

This second statement must be read in the context of the entire *Cochran* decision. Justice Erlich, in making the statement was discussing the evolution and application of the *Tedder* standard. The Justice cited several decisions that, had the *Tedder* dictum been applied mechanistically, might have been decided differently. However, in each instance the Justice provided justification for why the standard was not applied mechanically. Citing *Porter,* 429 So.2d at 296, Justice Erlich stated that the "override [was] proper where [the] jury was probably influenced in favor of life by an *improper* factor." *Cochran,* 547 So.2d at 935 (emphasis in original). The improper factor Justice Erlich was referring to in the present case was the vivid description of death by electrocution given to the jury by Porter's defense attorney during the sentencing phase of the trial.

■■■ This Court agrees with Justice Erlich's opinion that a jury's recommendation is a nonbinding, advisory recommendation to the trial judge who, by statute, is the ultimate sentencer. It further agrees with the Justice that the trial judge should consider the jury's recommendation in light of all the facts the judge has before him or her at the time of sentencing. As Justice Erlich noted, evidence of which the jury is unaware may also properly enter into the trial judge's sentencing considerations. This Court concurs with the Justice's opinion that if facts known to the trial judge reasonably support a sentence of death, despite a jury recommendation of life imprisonment, the death sentence should be upheld. *Id.*

In *Porter v. State,* 429 So.2d 293 (Fla. 1983), evidence unavailable to the jury, but that the trial judge considered provided a proper basis for the reviewing court to uphold Petitioner's sentence. This evidence included access to a deposition which indicated, in advance, that Petitioner intended to kill his victims to allow him time to abscond with their automobile. Further, the Florida Supreme Court noted that the jury may have been swayed by defense counsel's "extremely vivid and lurid" description of electrocution. *Id.* at 296. Hence, this Court finds that it was proper to refrain from a mechanistic application of the *Tedder* standard. While this Court acknowledges the confidence placed in Florida juries in making sentencing recommendations, this Court is also aware of the need for a jury override in the proper situation. Raleigh Porter's sentencing was such a situation.

Therefore, this Court finds that neither of the two statements, nor any other statements made by the Florida Supreme Court in the decisions referred to above, constitute new evidence that would entitle Petitioner to habeas corpus relief. Accordingly, Petitioner's first claim is denied.

2. The second new claim Petitioner raises is that the Florida Supreme Court barred the presentation of evidence indicating that Petitioner's death sentence was based on victim impact information. Petitioner asserts that barring evidence of reliance on victim impact information is contrary to the Florida Supreme Court's holding in *Jackson v. Dugger,* 547 So.2d 1197 (Fla.1989) which removed bars to the presentation of such evidence. Petitioner's reliance on *Jackson* is misplaced.

In *Jackson,* the Florida Supreme Court vacated a death sentence that the jury had recommended and the trial judge had imposed. During Jackson's trial for the first degree murder of a police officer, the prosecution had offered extensive testimony by a sheriff. During his testimony, the sheriff was asked to state his opinion regarding the victim's reputation among his peers and the effect the victim's death had on the members of the police department and the

safety of the community. Defense counsel vigorously objected to the sheriff's testimony.

The sheriff's testimony was held to violate the rule of *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) because the testimony impermissibly focused attention on the victim's character and reputation rather than on the defendant and his crime. The court found that it could not say beyond a reasonable doubt that the *Jackson* jury would have recommended death without the sheriff's victim impact information.

*Jackson* and *Porter* are not analogous for several reasons. First, the trial judge's statements in the present case do not constitute a *Booth* violation as did the victim impact testimony in *Jackson.* At Porter's sentencing hearing, the trial judge stated, "It so happens that Raleigh Porter was tried by a Judge that has a lot more sympathy for the feelings of the victims than he does worry about the sensibilities of the murderer." *Porter v. Dugger,* 559 So.2d at 202 n. 3. No other victim impact evidence was presented.

Second, the *Jackson* jury recommended a sentence of death, while the jury in Porter's case recommended a sentence of life imprisonment. Further, the *Jackson* jury recommended death after hearing the extensive victim impact information that amounted to a *Booth* violation.

In addition, the *Jackson* court noted that nothing in the *Booth* decision suggests that *Booth* should be applied retroactively to cases where defense counsel did not contemporaneously object to victim impact evidence. *Jackson,* 547 So.2d at 1199. As the Florida Supreme Court noted in its *Porter* decision, Petitioner's defense counsel failed to raise a contemporaneous objection to the trial judge's remarks. *Porter,* 559 So.2d at 202. Because *Jackson* and *Porter* are not analogous, this Court finds that the Florida Supreme Court did not violate any of the controlling language in *Jackson v. Dugger,* 547 So.2d 1197, when reaching its decision in *Porter v. Dugger,* 559 So.2d 201. Therefore, Petitioner has failed to demonstrate

that he is entitled to habeas relief. Accordingly, this claim is denied.

3. The third new claim Petitioner–Porter raises is that the Florida Supreme Court rejected his claim that his death sentence violated *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) (holding that Oklahoma statute detailing the aggravating factor, "especially heinous, atrocious, or cruel," was unconstitutionally vague as applied). Petitioner Porter claims the court incorrectly held that the *Maynard* decision does not apply in Florida. This argument has already been made and rejected in *Smalley v. State* 546 So.2d 720 (Fla.1989). In *Smalley,* the Florida Supreme Court distinguished the application of Florida's statutory aggravating factor, "especially heinous, atrocious, or cruel" (HAC), from the Oklahoma application of a similarly worded statute. After the *Smalley* court effectively distinguished the Oklahoma statute, the court also noted that the validity of the Florida application of HAC was upheld by the United States Supreme Court in *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

Pursuant to the *Smalley* decision, this Court finds that the Florida Supreme Court's interpretation of the applicability of *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, to Florida sentencing procedures is entirely correct. Therefore, Petitioner's third argument has no merit. Accordingly this claim is denied.

4. The fourth new claim Petitioner Porter raises is that the Florida Supreme Court incorrectly barred his burden-shifting claim because the court erroneously found that *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 does not apply in Florida.

Petitioner argues that the Florida Supreme Court misinterpreted *Penry* as being inapplicable to proceedings in Florida. Petitioner's argument is incorrect. The Florida Supreme Court thoroughly discussed the *Penry* decision in *Porter,* 559 So.2d at 204, and distinguished between the Texas sentencing procedures challenged in *Penry* and Florida's sentencing procedures.

The Florida Supreme Court pointed out that Florida law dictates that the trial judge decide the sentence after the jury makes a nonbinding recommendation. As the Florida Supreme Court explained, Texas law is not like Florida law because Texas law mandates that the jury decide the sentence of the criminal defendant. This Court adopts the Florida Supreme Court's holding that *Penry* is not applicable to Florida sentencing procedures.

Additionally, in his appeal to the Florida Supreme Court, Petitioner Porter argued that the trial court incorrectly shifted the burden of showing that the death sentence was an inappropriate penalty. The Florida Supreme Court specifically discussed Petitioner's burden-shifting argument based on *Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir.1988). The court found that, as a decision of an intermediate federal court, *Adamson* was not applicable retroactively under *Witt v. State,* 387 So.2d 922 (Fla. 1980) *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). This Court is persuaded by the decision and reasoning of the Florida Supreme Court and therefore does not adopt Petitioner's argument. Accordingly, Petitioner's fourth claim is denied.

5. The final new claim Petitioner raises is that the Florida Supreme Court rejected his claim that his death sentence violated the Eighth Amendment because the judge refused to consider mercy or sympathy for Petitioner. Petitioner argues that this rejection was based on the incorrect view that *Penry* does not apply in Florida.

Florida's sentencing scheme complies with the dictates of *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), which require that the sentencer consider any relevant evidence regarding the defendant's character, prior record, or the circumstances surrounding the offense. The *Porter* trial judge complied with this requirement. Therefore, Petitioner's final ground does not raise a valid basis for which habeas corpus relief may be granted. Accordingly, this claim is denied.

*Part III*

Part III of this opinion addresses Petitioner's and Respondent's first and second Supplemental Briefs and Court-ordered Supplemental Memoranda. After considering Petitioner's supplemental arguments, this Court again finds that habeas corpus relief must be denied.

In his two Supplemental Briefs, Petitioner asserts a total of five additional grounds for which he alleges habeas corpus relief should be granted:

1. Petitioner received ineffective assistance of counsel at both of his sentencing hearings.

2. The jury's recommendation of life imprisonment precluded a finding that Petitioner's crime was "heinous, atrocious or cruel" pursuant to *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).

3. The sentencing judge impermissibly considered victim impact evidence, thereby violating the principles set out in *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).

4. *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), does not apply to Petitioner's case because the rule announced in *Booth* was dictated by *Enmund v. Florida* and is therefore not a "new rule" as *Teague* defines the term.

5. The Eighth Amendment violations Porter set out in his petition for habeas corpus and in the amendment cannot be found harmless beyond a reasonable doubt.

6. Meaningful review of Petitioner's sentence in light of the decision in *Parker v. Dugger,* 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991), did not occur because mitigating evidence that was not presented at Petitioner's trial could have provided a reasonable basis for the sentence of life imprisonment.

1. The first argument Petitioner raises in his Supplemental Briefs is that he received ineffective assistance of counsel at both of his sentencing hearings. Ineffective assistance of counsel claims are governed by the Supreme Court's two-part test set out in *Strickland v. Washington,* 466 U.S. 668,

687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Under that test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Two attorneys, Widmeyer and Jacobs, represented Petitioner during the penalty phase of his first sentencing hearing in 1978. Petitioner asserts that Widmeyer was ineffective because he did not know about the possibility of a jury override and did not present mitigating evidence because of his lack of knowledge. Petitioner argues that the mitigating evidence was necessary to support a reasonable basis for the jury's life recommendation.

It appears that Petitioner's Supplemental Brief did not discuss his other attorney, Robert Jacobs, because Jacobs' testimony at an earlier evidentiary hearing[1] refutes Petitioner's arguments and establishes that Petitioner received effective assistance of counsel. Mr. Jacobs, at the time of Petitioner's first sentencing, was the Chief Assistant Public Defender in Ft. Myers. At the evidentiary hearing, Jacobs testified that he functioned as second chair during Petitioner's trial but that his responsibility was to conduct the penalty phase of the trial for Petitioner. (Tr. of Evidentiary Hr'g, Vol. V, Docket No. 64 at 31.) Mr. Jacobs specifically stated that he was aware of the possibility of a jury override in Petitioner's case. *Id.* at 51. He further explained that he knew Petitioner's trial judge had overridden several jury recommendations of life imprisonment. *Id.* at 49–50.

On the issue of introducing mitigating evidence at the penalty phase of Petition-

er's first sentencing, Mr. Jacobs recalled that he was aware that non-statutory mitigating evidence could be presented. *Id.* at 38. He specifically asked for jury instructions stating that any evidence of mitigation could be considered. *Id.* at 51. Further, mitigating evidence was presented at Petitioner's sentencing. In his findings in support of the death sentence, the judge specifically referred to two mitigating factors: (1) Porter's age; and (2) the fact that Porter had a wife and two children.

■ Petitioner apparently believes (but does not argue in his Supplemental Brief) that if his family members had testified at the first sentencing, mitigating evidence regarding Petitioner's childhood physical and sexual abuse would have been elicited. However, Mr. Jacobs' testimony established that the defense made a conscious, tactical decision not to present testimony about Petitioner's background. Jacobs stated that the defense team was concerned that if Petitioner's family members took the stand, testimony about Petitioner's prior criminal activity would come into evidence. *Id.* at 43. Reasonable tactical decisions cannot form a basis for a claim of ineffective assistance of counsel. *Stanley v. Zant*, 697 F.2d 955, 966 (11th Cir.1983), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).

Neither Petitioner nor Respondent briefed a discussion of Jacobs' testimony at the evidentiary hearing in their Supplemental Briefs. Jacobs' statements clearly indicate that Porter received effective assistance of counsel during his first sentencing. Thus, Petitioner cannot meet the required showing under the first prong of the *Strickland* test.

In his Supplemental Brief, Petitioner subsequently turns to the argument that he experienced ineffective assistance of counsel at his second sentencing hearing. Petitioner claims that Mr. Woodard, his attorney at the second sentencing hearing, was generally unaware of what kind of evidence constituted mitigation. Therefore,

---

1. This Court held an evidentiary hearing in October, 1988, on the issues of: (1) ineffective assistance of counsel at both of Petitioner's sen-

tencing hearings; and (2) possible conflict of interest. *See* Part I above.

Petitioner claims that since Mr. Woodard did not know what constituted mitigating evidence, he failed to investigate Petitioner's background and to introduce mitigating evidence at the sentencing. This claim is erroneous in light of the record of the evidentiary hearing before the Court.

At the evidentiary hearing held by this Court in October, 1988, Mr. Woodard stated that he was aware of the admissibility of non-statutory mitigating evidence. (Tr. of Evidentiary Hr'g, Vol. III, Docket No. 62 at 29.) Woodard explained that he asked Petitioner if there were anything in his background that would be helpful to his case. Woodard said that Petitioner indicated to him that the only person with potential knowledge of mitigating evidence was his mother. *Id.* at 61. As Respondent noted, prior to the second sentencing hearing, Mr. Woodard moved to present background and character testimony from Petitioner's family in mitigation. In his motion, Woodard also stated that any evidence of mitigation must be considered by the court before a death sentence can be imposed. Further, Mr. Woodard listed Petitioner's mother as a witness whom he expected to call at the second sentencing hearing. However, Woodard also stated that when the time for the resentencing hearing drew near, Petitioner insisted that his mother not be contacted, nor brought to Florida to testify. *Id.* at 61–63.

At the evidentiary hearing, Woodard acknowledged that he was aware of Petitioner's criminal background. Additionally, he recognized that it would have been harmful to Petitioner to present family members at the sentencing if doing so would mean disclosure of other criminal activity. Testimony from Petitioner's mother could have led to the introduction of Porter's history of criminal activity. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.

In the present case, Woodard knew of Petitioner's prior criminal activity. As the Florida Supreme Court noted, "following such an obvious awareness of the possibility of that form of mitigating evidence and circumstance, … the failure to produce it [Mrs. Porter's testimony] then [at resentencing] was a result of the considered and … [tactical] decision as opposed to one of negligence." *Porter* 478 So.2d at 35 (quoting the trial court). Since Woodard made a reasonable tactical decision not to present mitigating evidence, Petitioner cannot meet the first prong of the test for ineffective assistance of counsel which requires that counsel be deficient. *Stanley v. Zant*, 697 F.2d 955, 966 (11th Cir.1983), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).

Even assuming that Petitioner could meet the first prong of *Strickland*, his claim would be foreclosed because he cannot meet the second prong of *Strickland* and establish that his counsel's performance prejudiced his case. This Court finds that the case law Petitioner cites to support his claim of ineffective assistance of counsel at the resentencing is unpersuasive. However, this Court is persuaded by Respondent's argument which is based on *Lusk v. Dugger*, 890 F.2d 332 (11th Cir. 1989).

In *Lusk*, a prison inmate was convicted of first degree murder. The trial judge, overriding the jury's life recommendation, found that four statutory aggravating factors were present and that no mitigating factors weighed in favor of the defendant. The defendant then petitioned for collateral relief stating he had ineffective assistance of counsel at his sentencing. An evidentiary hearing was held at which the defendant introduced evidence of, among other things, troubled relationships with his father, stays in children's homes, psychiatric problems, and periods of neglect and abuse.

The *Lusk* defendant argued that had his counsel presented mitigating evidence, a reasonable basis for the jury's life recommendation would have been established,

thereby precluding a jury override.[2] The Eleventh Circuit held that Lusk had not fulfilled the second prong of the *Strickland* test because he could not establish that he was truly prejudiced by the failure to introduce mitigating evidence. The appellate court found that even if the evidence had been introduced at the defendant's sentencing, his death sentence "would not be affected due to the presence of significant aggravating factors." *Lusk,* 890 F.2d at 338.

Petitioner's ineffective assistance of counsel claim regarding Woodard is similar to the claim made in *Lusk.* Petitioner asserts that had he been able to introduce evidence of his background at his second sentencing, a life recommendation would have been supported. However, in Petitioner's case, the judge found three aggravating factors. Therefore, since *Lusk* is controlling precedent, this Court finds that even if Petitioner could meet the first prong of the *Strickland* test, that Woodard was deficient, Petitioner cannot meet the second prong, that Petitioner was prejudiced by Woodard's performance.

2. The second argument Petitioner raises in his Supplemental Briefs is a restatement of his *Maynard* claim. (*See Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853). This claim was discussed and denied in Part II, Section 3 of this order. Nothing in Petitioner's Supplemental Briefs has moved this Court to reconsider its decision to deny this claim. The Eleventh Circuit denied Petitioner's similarly worded claim in *Porter v. Wainwright,* 805 F.2d at 942; thus, any further discussion on this claim is procedurally barred.

3. The third argument Petitioner raises in his Supplemental Briefs is also a restatement of a previous claim, that Petitioner's sentence was based on victim impact infor-

mation. This claim was discussed and denied in Part II Section 2 of this order.

4. The fourth argument Petitioner raises in his Supplemental Briefs is that the retroactivity rule of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) does not apply to his case. This rule provides that new constitutional rules of criminal procedure generally should not be applied retroactively to cases on collateral review. However, a rule may be retroactive if it is a "new rule" that: (1) places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or (2) requires the observance of "those procedures that ... are 'implicit in the concept of ordered liberty.'" *Id.* 489 U.S. at 307, 109 S.Ct. at 1073 (citations omitted).

Petitioner's *Teague* claim is actually tied to his victim impact claim because Petitioner asserts that the rule in *Booth* is not a "new rule" as defined by *Teague* and therefore, that *Booth* applies retroactively to his case. Petitioner also contends that the rule in *Maynard* is not a "new rule" and therefore, *Maynard* applies retroactively to his case.

As noted in Part II Section 2 of the order, Petitioner's claim that he was barred from presenting evidence regarding the use of victim impact information was without merit. Further, this Court has found that victim impact information was not impermissibly used in Petitioner's sentencings. *See* Part II Section 2.

In Part II Section 3 of the order, this Court held that *Maynard* is inapplicable to Petitioner's case because Florida's interpretation of "heinous, atrocious, or cruel" has been upheld by the United States Supreme Court in *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Therefore, since violations of the rules in

---

**2.** To quote the Eleventh Circuit:

This contention is inextricably linked to Lusk's interpretation of *Tedder* and its progeny. Lusk contends that if there is *any* basis to support a jury recommendation of life, then the trial judge must abandon his duty to balance aggravating factors against mitigating factors in determining sentence and accept that recommendation.

It is now clear that the Florida courts do not so interpret *Tedder.* The Florida Supreme Court recently held in *Pentecost v. State,* 545 So.2d 861 (Fla.1989) that such an understanding of the jury override rule was incorrect.

*Lusk,* 890 F.2d at 337 n. 4.

*Booth* or *Maynard* are not applicable to the case at bar, this Court need not decide whether the rules are retroactive under the standard set forth in *Teague*.

5. The fifth argument Petitioner raises in his Supplemental Briefs is that an Eighth Amendment error occurred during his sentencing and that the error is not harmless beyond a reasonable doubt. Petitioner did not specifically refer to any alleged Eighth Amendment violations in his Supplemental Briefs. Instead, he stated that the Eighth Amendment errors detailed in his petition are not harmless beyond a reasonable doubt. Petitioner may be referring to his *Maynard* claim or his claim based on *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Petitioner's *Maynard* claim is without merit because this Court has previously denied all Eighth Amendment *Maynard* claims.

Petitioner raised an Eighth Amendment claim based on *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, in his appeal to the Eleventh Circuit. This claim is also without merit because the Eleventh Circuit denied it as being procedurally barred. *Porter v. Wainwright*, 805 F.2d at 942.

6. The sixth argument Petitioner raises in his Supplemental Briefs is that he did not receive meaningful appellate review in light of the holding in *Parker v. Dugger*, 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991). After considering Petitioner's and Respondent's arguments, this Court finds that Petitioner's case is factually distinguishable from *Parker*, and that Petitioner may not avail himself of a claim based on that case.

In *Parker*, the defendant received two jury recommendations of life imprisonment for two murders. The trial judge overrode the sentence for one of the murders after finding six statutory aggravating circumstances. On appeal, the Florida Supreme Court struck two of the aggravating circumstances, finding that there was insufficient evidence to support them. *Parker v. State*, 458 So.2d 750, 754 (Fla.1984), *cert. denied* 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985).

The Supreme Court noted that Florida is a "weighing state." A weighing state is one in which the death penalty may be imposed only where specified aggravating circumstances outweigh all mitigating circumstances. *Parker v. Dugger*, 498 U.S. at ——, 111 S.Ct. at 738 (citing Fla.Stat. § 921.141(3) (1985)). "In a weighing state, when a reviewing court strikes one or more of the aggravating factors on which the sentencer relies, the reviewing court may, consistent with the Constitution, reweigh the remaining evidence or conduct a harmless error analysis." *Parker v. Dugger*, 498 U.S. at ——, 111 S.Ct. at 738 (citing *Clemmons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990)). The *Parker* court performed a reweighing analysis and found that Parker's sentence was arbitrary and capricious.

*Parker* is factually distinguishable from Petitioner's case. In *Porter v. State*, 429 So.2d 293, the Florida Supreme Court did not strike any aggravating factors found by the trial judge. Thus, the Florida Supreme Court did not have to reweigh the evidence or perform a harmless error analysis. Since a reweighing was not necessary in Petitioner's case, a claim based on *Parker* must fail.

Both Petitioner and Respondent submitted Court-ordered memoranda. The arguments in the memoranda did not convince this Court to hold otherwise on any of the claims or arguments discussed above. Accordingly, it is

ORDERED:

1. That Petitioner's motion to alter or amend judgment and Respondent's motion to alter or amend judgment and motion for clarification are PARTIALLY GRANTED to the extent that the Clerk is directed to vacate this Court's Order of November 4, 1991;

2. That Petitioner's attorneys at his original sentencing, Widmeyer and Jacobs, were not unconstitutionally ineffective for failing to investigate into and present mitigating character evidence; and that Petitioner's attorney at his second sentencing hearing was not constitutionally ineffective.

3. That an actual conflict of interest that adversely affected Attorney Widemeyer's representation did not exist;

4. That Petitioner's Motion for Leave to File Amendment to Petition for Writ of Habeas Corpus is GRANTED;

5. That Petitioner's amended petition for habeas corpus relief is DENIED.

6. That Plaintiff's motion to permit filing of supplemental authority (Doc. No. 115) is DENIED.

7. That any remaining motions in this case are DENIED as moot.

DONE AND ORDERED.